[Appeal of Lavina R. Hannum.]

ting the case to the jury. Without considering the instructions as to the measure of damages, it is plain that the jury did not follow it, and there was no harm done to the plaintiff in error. The assignment of error to that part of the charge is in direct violation of the rule of Court that, "when the error assigned is to the charge of the Court, the part of the charge referred to must be quoted *totidem verbis* in the specification." "Any assignment of error not according to this will be held the same as none:" Criswell *v.* Altemus, 8 Harris, 124.

Judgment affirmed.

**CHESTER COUNTY.**

JANUARY TERM, 1882, No. 54.                    FEBRUARY 6TH, 1882.

## Appeal of Lavina R. Hannum.

1. Where an administrator sold real estate of the decedent under an order of the Orphans' Court for the payment of debts, and without actual fraud himself became the purchaser in the name of a third person, and the sale was confirmed. it was not error for the Court to open the order of confirmation and set aside the sale at the instance of a lien creditor of the decedent, the rights of other persons not being prejudiced, though the amount of the proceeds of the sale was sufficient to pay the creditors lien.

2. Such creditor is not estopped by the fact that he has brought suit against the administrator and his sureties on the bond provided for in the order of sale.

3. *Semble,* that one of the sureties on the bond who held a mortgage on the real estate given by the decedent, but who, after the sale, took a mortgage, with knowledge of the facts, from the administrator individually, on the same real estate in settlement of the debt, had confirmed the sale and could not object to it.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Lavina R. Hannum from the decree of the Orphans' Court of *Chester County,* in the matter of the estate of Sarah J. Worth, deceased.

The auditor in the Court below, A. P. Reid, reported the facts substantially as follows:

Sarah J. Worth died April 8th, 1877, intestate, leaving three children,—Henry M. Worth, Franklin J. Worth, and Rebecca J. Hiddleson, and seised of certain real estate in the borough of West Chester. Upon this real estate were three liens, in the following order: A mortgage to the West Chester Building and Loan Association, dated April 5th, 1875, to secure the payment of $1000 in ten years, with in-

terest, and monthly contributions of $5 on five shares of stock, owned by the decedent, and fines; a mortgage to J. Llewellyn Meredith, dated April 5th, 1875, payable in five years, which had been reduced to $1000; and a judgment for $884.19, payable to the children of the decedent in equal shares. Henry M. Worth took out letters of administration May 7th, 1877. There was no personalty, and November 19th, 1877, the Orphans' Court made a decree authorizing the administrator to sell the above-mentioned real estate for the payment of the debts of the decedent, upon his filing a bond in $5600, with William H. Hodgson and J. Llewellyn Meredith as sureties. The bond was filed, and the administrator made return to the order of sale that he had made sale of the property to William H. Hodgson for $2300. The sale was confirmed by the Court. The administrator by deed, dated April 1st, 1878, but not recorded until August 10th, 1880, conveyed the premises to William H. Hodgson. Hodgson was not at the sale, and at the time knew nothing about it. Before the sale of the property, it was supposed it would not sell for enough to cover the liens, and the administrator, under the advice of counsel, bought it in the name of Hodgson, with the intention of creating new liens in favor of the lien creditors, and holding the property until a sale to better advantage could be made. His sister, Rebecca J. Hiddleson, was consulted about it before the sale was made, and was informed that it had taken place, and that he was the purchaser. He then filed an account, charging himself $2348, the amount of the sale, and $48 in rent collected, and claiming credit for, *inter alia:*

| | |
|---|---|
| W. C. B. and L. Association, judgment and interest, . | $ 700 50 |
| Rebecca J. Hiddleson *et al.*, judgment and interest, . . | 235 18 |
| J. L. Meredith, judgment and interest, . . . . | 1050 00 |

This account was confirmed. After the filing of the account, Worth collected the rents of the property, and about April 1st, 1880, occupied it himself. William H. Hodgson and wife by deed, dated August 9th, 1880, and recorded August 10th, 1880, conveyed the premises to Henry M. Worth, who, November 16th, 1880, executed a mortgage to J. Llewellyn Meredith to secure the payment of $1000 and interest from May 1st, 1880, in settlement of the mortgage he had previously held. The other lien creditors were not paid. The auditor found that in this transaction no actual fraud was meditated. Nothing was said or done to deter bidders at the sale, and the property brought a fair price and as much as it would be likely to bring if sold again. Meredith did not know of the facts attending the sale until

some time in August, 1880. A judgment was entered January 4th, 1881, against Worth in favor of Lavina R. Hannum for $700. Other judgments were entered against him, and on the 6th of January 1881, he made an assignment for the benefit of creditors.

January 24th, 1881, J. L. Meredith filed a petition, under which the present contention arises, setting forth that Worth " fraudulently and unlawfully became the purchaser of said real estate himself;" and "falsely made return that he had sold the same to Hodgson, and that the Court, being deceived by the said administrator, and without knowledge of his fraud, confirmed the sale; that no consideration was paid Hodgson upon said transfer of title, and that the same was wholly collusive and fraudulent;" that none of the credits claimed in the account filed had been paid ; that Worth was insolvent ; that these frauds had only come to the knowledge of the petitioner in the latter part of December, 1880. He asked to have the decree confirming the sale to Hodgson and the decree confirming the account opened, stricken off and set aside, and the administrator removed.

Answers were filed by Lavina R. Hannum, and others.

On March 15th, 1881, The West Chester Building and Loan Association presented their petition, asking leave to join with Meredith as a party complainant, which was granted.

There was uncontradicted evidence that, February 10th, 1881, the association brought suit on the $5600 bond against the principal and sureties, and that they filed an affidavit of defence.

The auditor found that "The Building Association has done nothing that would prejudice their right, except to permit the administrator to have the stock transferred to himself. This, of course, was subject to the Association's rights as collateral assignee, and was without any knowledge of the facts. It was confirmatory of nothing. '

The auditor reported that Meredith, having full knowledge of the facts, and having with deliberation taken a new security, had elected to confirm the purchase and could not object to it, and that the sale having produced ample funds to pay both him and the Building Association, their debts were in effect paid, and that only the heirs and unsatisfied creditors could ask to have the sale set aside. He further reported that the prayer for striking off the decree confirming the sale ought not to be granted, and that the prayer for striking off the decree confirming the account should be granted, and that the items of credit for claims unpaid

should be stricken out. To this report Meredith and the Building and Loan Association filed exceptions.

The Court, FUTHEY, P. J., filed the following opinion:

" It is a well-settled principle of law that no trustee, or person acting in a fiduciary character, can become a purchaser at his own sale, either directly or indirectly, or acquire an interest in the trust estate, without the consent of those for whose benefit he has consented to act, or of the Court having jurisdiction of the trust; such a purchase, however, is not absolutely void, but voidable at the election of the *cestui que trust*, or those beneficially interested in the estate, so that the trustee takes the property, subject to the power of disaffirmance by lien creditors, or others interested: Fisk *v.* Sarber, 6 W. & S., 18; Chronister *v.* Bushey, 7 W. & S., 152; Beeson *v.* Beeson, 9 Barr, 279; Pennock's Appeal, 2 Harris, 446; Chorpenning's Appeal, 8 Casey, 315; Estate of John C. Hallman, 1 Chester Co. R., 141.

" The real estate in question was purchased for the administrator at his own sale, and return made to Court that the property was sold to William H. Hodgson, and the sale confirmed. Mr. Hodgson was entirely ignorant at the time of the fact that the property was returned as sold to him; he had not attended the sale, or authorized his name to be used. No further action was had with regard to perfecting the title by the making of deeds for about two and a half years, and until August, 1880, some five months before the commencement of these proceedings, during all which time neither the sureties of the administrator nor the lien-creditors (except a sister of the administrator) appear to have had any knowledge that the purchase had been made by the administrator. Under these circumstances, had the Court been informed of the facts when they came to the knowledge of the sureties, we would, at their instance, without more, have stricken off the confirmation of the sale. They became sureties for the faithful appropriation by the administrator of the proceeds of the sale. Their suretyship contemplated a sale to some one other than the administrator, and the receipt of purchase-money, for the faithful appropriation of which they became responsible. It did not contemplate a responsibility for moneys to be raised by the administrator from his own resources; hence, they had standing to ask the Court to interfere in their behalf. It appears, however, that, after they became aware of the state of the title, one of them, Hodgson, to whom the sale had been confirmed, conveyed the land to the administrator individually, and the other, Meredith, took a new mortgage from him for a debt, secured by mortgage of the decedent. The auditor

[Appeal of Lavina R. Hannum.]

finds that Meredith, the surety who petitions the Court for relief, by this action confirmed the purchase, so far as he is concerned, and cannot now object to it. We are not prepared to say that he is in error, although it is not necessary to express an opinion upon that point. The application is united in by the West Chester Building and Loan Association, a mortgage-creditor of the decedent, and they ask that the confirmation of this sale may be stricken off, so that the lien of their mortgage may be preserved until the property is properly sold, and the purchase-moneys that may be realized therefrom are in the hands of the administrator. This creditor is undoubtedly a party having an interest in the sale of the land, and competent to make this application: Fisk v. Sarber, Pennock's Appeal, *supra*.

" It is objected that, as the price bid for the land by the administrator is sufficient to cover their liens, they have no standing, but must resort to the sureties of the administrator, he being insolvent, to obtain payment of it. Had the sale been a *bona fide* one, this position would probably have been correct, but should the Court, under the circumstances, compel them to loose their hold on the land and look to the sureties alone, and take their chances of recovering their money from them ? We cannot assure them that they would be successful in this resort. It appears from the report of the auditor that they have brought suit against the sureties, whc have filed an affidavit of defence, and the case awaits the determination of this proceeding. As the sale is voidable, and as the Building Association, as the auditor finds, have done nothing to prejudice their rights, and as the title is still in the administrator, we are of opinion they are in a position to ask the interference of the court, and that the relief prayed for should be granted. That the Court has power to grant such relief we think is clear: George's Appeal, 2 Jones, 260 ; Shollenberger's Appeal, 9 Harris, 337; Dundas's Appeal, 14 P. F. S., 325.

" The rights of no one will be prejudiced thereby. Mrs. Hiddleson, one of the lien creditors, who by the sale as made would receive a small amount on her judgment, was cognizant of the purchase by the administrator, and is affected with knowledge that he had no authority to thus purchase, and she cannot complain that the sale is not sustained. She will occupy the same position as a lien-creditor, which she did before the sale.

" The judgment-creditors of the administrator, as an individual, and his assignee for benefit of creditors, have no such interests as will prevent the interposition of the Court. Their rights rise no higher than those of their creditor, as against

[Appeal of Lavina R. Hannum.]

debts owing by the decedent: Sheetz *v.* Marks, 2 Pearson, 302, and cases there cited.

" The rights of purchasers will not be affected, as the title still remains in the administrator.

" That the sureties of the administrator will be relieved from responsibility we do not, under the circumstances, think inequitable. This case is an illustration of the unwisdom of trustees purchasing at their own sales, unless they have the permission of the Court, or the consent of all parties interested as owners or beneficiaries."

The Court, therefore, ordered :

1. That the decree confirming the sale be opened, and the confirmation of the sale be stricken off, and the sale be set aside.

2. That the decree of the Court, confirming the account of the administrator, be opened, and the account be corrected by striking out the item on the debit side, charging himself with $2300, purchase-money of the real estate, and by striking out the items of credit, not paid by him, including the Meredith judgment for $1050, and his compensation.

3. That the letters of administration, granted to H. M. Worth, be vacated, and he be removed.

Lavina R. Hannum then appealed, assigning as errors that the Court erred :

1. In opening the decree of the confirmation of the sale and setting it aside.

2. In striking out of the account of the administrator the charge of $2300 for the purchase-money of the real estate.

3. In striking out of the account the credit for $1050, paid to J. L. Meredith for his lien.

*Curtis H. Hannum* and *Thomas W. Pierce,* for the appellant.

The Orphans' Court had no jurisdiction in the case. The petition of Meredith was a bill in equity by a stranger, and the joinder of the Building and Loan Association could not enlarge the powers of the Court : Dundas's Appeal, 14 P. F. S., 325 ; Ake's Appeal, 24 P. F. S., 116 ; Weiyand *v.* Weller, 3 Wr., 443 ; Willard's Appeal, 15 P. F. S., .265. The purchase-money was sufficient to fully cover the debt, and the return and confirmation fixed the administrator and his sureties : Kennedy's Appeal, 4 Barr, 149 ; King *v.* Gunnison, 4 Barr, 171 ; Stewart *v.* Moody, 4 Watts, 169.

Regarding the sale as voidable, it is not equitable to disturb it at the instance of a creditor, whose debt is paid by it, and who can have no further interest in the matter : Leisenring *v.* Black, 5 Watts, 303.

[Dunn v. Washington Building and Loan Association.]

*R. Jones Monaghan* and *R. T. Cornwell*, for the appellees.

The appellant is a mere volunteer, and her rights could rise no higher than those of Worth : Basset *v.* Nosworthy, 2 L. Cas. Eq., 89 ; Cover *v.* Black, 1 Barr, 493 ; Patterson's Estate, 1 Casey, 71 ; Parks *v.* Jackson, 11 Wend., 442 ; Sheetz *v.* Marks, 2 Pearson, 305.

The jurisdiction of the Orphans' Court is exclusive : Shollenberger's Appeal, 9 Harris, 341 ; Dundas's Estate, 23 P. F. S., 479 ; Hammett's Appeal, 2 Norris, 392 ; Otterson *v.* Gallagher, 7 Norris, 355 ; Lex's Appeal, 10 W. N. C., 209.

The Building Association held a lien, which could not be taken away, except by a true and valid sale : Stewart's Appeal, 32 P. F. S., 323.

PER CURIAM : We affirm this decree upon the opinion of the learned Court below.

Decree affirmed, and appeal dismissed at the costs of the appellant.

## CLEARFIELD COUNTY.

JANUARY TERM, 1882, Nos. 325 and 326.          MAY 1ST, 1882.

# Dunn *versus* Washington Building and Loan Association.

1. A. owned land, subject to mortgages held by a building association, and agreed with B. to exchange it for land of B. and $1000. He then wrote to the association asking the privilege of transferring the mortgages to the land obtained in exchange with B. The association, by resolution entered on the minutes, granted the request, provided he would pay all the expenses of the transfer. The association notified B. of its action, and gave him an order to its attorney directing the transfer to be made. A. and B. took the order to the attorney and were informed he would write the mortgage necessary to make the transfer, and they could complete the exchange. B. paid $130.03 to the association for back fines, dues, and interest, and to A. the balance due to him, and entered into possession. *Held,* in a suit by the association against A. as defendant, and B. as *terre tenant,* that the above facts did not constitute a release of the mortgages, and that all the association agreed to do was to satisfy their mortgages upon receiving a new one upon the land exchanged.

2. Even if there was an agreement by the association, it was without consideration, inasmuch as the interest paid by B. was money which the association was previously entitled to receive.